SKINNER *v.* KELLEY. [1]

1. EQUITY—PLEADING—ESCROW—SUFFICIENCY OF ALLEGATIONS.
   A bill to quiet title and to secure a judicial determination of the effect of a deed, alleging that the deed was deposited with a certain person, who was directed not to deliver the same until after the grantor's death, and then to deliver it to the

---

[1] Rehearing denied May 12, 1905.

grantee and to no other person, and that the parties both
planned that if the grantor survived the property should
belong absolutely to the grantor, sufficiently alleges that the
deed was deposited with the direction that it was to be de-
livered to the grantee only in case he survived the grantor,
and at her death.

2. ESCROW—CONDITION OF DELIVERY—EVIDENCE.
    In a suit to quiet title and to obtain a judicial determination
    of the effect of a deed deposited in escrow, evidence *held* to
    show that the grantor never authorized the delivery of the
    deed, except on condition and in case the grantee should sur-
    vive her.

Appeal from Washtenaw; Kinne, J.   Submitted Octo-
ber 6, 1904.   (Docket No. 24.)   Decided November 9,
1904.

Bill by Maurice G. Skinner, administrator of the estate
of Amelia W. Kelley, deceased, and others, against Louis
W. Kelley to quiet title to land.   From a decree dismissing
the bill, complainants appeal.   Reversed.

*Frank A. Stivers* (*John F. Lawrence*, of counsel), for
complainants.

*M. R. Salter* (*J. M. Everden* and *George P. Stone*, of
counsel), for defendant.

MONTGOMERY, J.   The bill in this case was filed to
quiet title and to have a judicial determination as to the
effect of a deed and will, executed by Amelia Kelley in
her lifetime, and deposited with Judge Cheever, as here-
inafter stated.   The claim of complainants is that the
deed was deposited with Judge Cheever with the direction
that it was to be delivered to the grantee, Obadiah A.
Kelley, only in case he survived Amelia, and at her death.
The defendant in this court claims that the bill of com-
plaint does not charge such a case.

We think that while the allegations are not as specific
as might be desired, that the theory now presented is fairly
foreshadowed.   The bill does aver that the deed was de-

posited with Judge Cheever, and that he was expressly directed not to deliver the deed until after decedent's death, and then to deliver it to Obadiah A. Kelley, and to *no other* person. The bill also avers that the parties, Mr. and Mrs. Kelley, both planned and intended that in case Mrs. Kelley survived her husband, the property should belong absolutely to Mrs. Kelley. The facts, as they appear by the record, are as follows: Obadiah A. Kelley married Amelia Kelley May 29, 1880. About the same year he became involved in a long lawsuit with his son, Louis L. Kelley, about certain lands, which subsequently became the property of Amelia Kelley, and which are the same lands involved in the present suit. The result was a long and bitter contest, and there was intense feeling against Louis L. Kelley on the part of Obadiah A. Kelley and his wife, Amelia. The lands were conveyed to Amelia Kelley by her husband May 13, 1882, and the deed duly recorded. Some time previous to November 28, 1892, Obadiah A. Kelley came to the office of Judge Noah W. Cheever, and stated that he and his wife had talked the matter over of making some arrangements for his benefit in regard to these lands. He said they wanted to arrange it so that in case he survived his wife, he could have the title to this land. Mr. Cheever told him he thought he could arrange it. On November 28, 1892, they called at Judge Cheever's office together. They both then stated they wished to have papers drawn so that in case Obadiah A. Kelley survived his wife, he could have the title to this land. Judge Cheever suggested the making of a deed, and having it delivered to him in escrow. In course of the conversation, after discussing the matter, he suggested also the will. The purpose of Mr. and Mrs. Kelley, and the object and intent of the papers drawn by Judge Cheever and executed by Mrs. Kelley, as testified by Judge Cheever himself, was as follows:

" They had both of them, in all the conversations I had with them in regard to this land, stated repeatedly that they did not want the son, Louis L. Kelley, to have this

property. They have always stated that, and they stated it then, but they did want some provision made, if possible, so that in case Amelia Kelley died before Obadiah, that he should have the property. They finally agreed upon the proposition that the deed and will should be executed by Amelia Kelley and left with me, and, in case Amelia Kelley died first, that the deed was to be delivered to Obadiah A. Kelley, and to no one else, and, in case Obadiah A. Kelley died first, that Mrs. Amelia Kelley should continue to have the absolute title to this property the same as she had had it.   *   *   *

"When they stated to me what they wished to do, I did not make any special examination of the authorities upon the question of the delivery in escrow, but I knew from previous examinations that there was a large conflict of authorities, both in the text-books and in the reports, in regard to the validity of such a delivery, if there were any conditions; and to make the thing entirely sure, as it appeared to me, I advised that a will also be drawn and executed to cover that contingency. The reason I suggested a deed in escrow was that, if it would work, it was a cheap and easy way to settle the matter; but feeling that there was some uncertainty as to the law under those conditions, I had the will prepared and executed by her."

The transaction occurred in the office of Judge Cheever, and both the will and deed are in his handwriting. The deed is the usual form of quitclaim, the consideration being "one dollar and love and affection." The will devised the land to Obadiah. After the papers were made, Judge Cheever made the following indorsement on the deed:

"This deed has been delivered to me in escrow, to be delivered to the within grantee, Obadiah A. Kelley, on the death of the grantor, Amelia Kelley, and not before.
"Dated November 28, 1892.
.    "NOAH W. CHEEVER."

Judge Cheever testifies that this memorandum was made for his own convenience, and was not made by direction of the parties. The circuit judge treated this memorandum as very persuasive, if not controlling, upon the question of fact, and found that the only restriction upon the depositary was that the deed should not be delivered in the grantor's lifetime.

A careful consideration of the case leads us to the conclusion that the grantor never authorized the delivery except on condition and in case her husband should survive her—a condition not fulfilled, as Mrs. Kelley survived her husband. The testimony of Judge Cheever is clear and convincing.

No other question need be discussed, as the conclusion reached shows complainants entitled to the relief prayed.

The decree is reversed, with costs of both courts to complainants.

The other Justices concurred.