# White Star Line Steamboat Co. *v.* Moragne.

## *Statutory Action in nature of Ejectment.*

1. *Deed delivered in escrow.*—When a deed for land is delivered in escrow, to become absolute and operative on payment of the purchase-money, the performance of that condition, *ipso facto*, effects a complete delivery, and the depositary afterwards holds as the agent or trustee of the grantee.

2. *Note as payment.*—The note of a third person, delivered by the payee to a creditor from whom he had bought a tract of land, with the understanding that he should collect it, apply the money to the satisfaction of the note for the purchase-money, and pay the balance, if any, to the payee and purchaser, does not operate as a payment of that debt, nor raise the presumption of payment, though it is shown that "said note was a solvent note."

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JOHN B. TALLY.

This action was brought by Isaac P. Moragne, against the White Star Line Steamboat Company, a private corporation, to recover a tract or parcel of land in Gadsden, particularly described in the complaint, with damages for its detention; and was commenced on the 29th August, 1887. The plaintiff died pending the suit, and it was revived and prosecuted in the name of his administratrix. The only plea was, not guilty. On the trial, as the bill of exceptions shows, the plaintiff proved her intestate's possession and ownership of the land, from 1860 until the close of the year 1883; and the evidence further showed that, on the 12th February, 1884, he sold and conveyed by quit-claim deed to R. L. Lindsay, who afterwards sold and conveyed to the defendant in 1886. The price to be paid by Lindsay to Moragne was $550, and the deed recited its present payment in hand; but the plaintiff's evidence showed that only about $170 was paid in cash, and that the deed to Lindsay was delivered in escrow to J. L. Cunningham, to become absolute and operative on payment of the purchase-money in full, "and that said Cunningham had never delivered said deed to Lindsay, or to any one else for him." The deed was produced on the trial, and offered in evidence by the defendant; having been produced by the sheriff, under a subpœna *duces tecum*, who said that he had obtained it from Cunningham for the purpose of getting an accurate description of the land, for

use in making a levy of an execution against Lindsay, issued on a judgment which had been rendered on one of the notes given by him to Moragne for the purchase-money of the land. W. L. Echols, who had obtained said judgment and execution against Lindsay, testified as a witness for the defendant, that he bought both of Lindsay's notes from Moragne, soon after they were executed; that he obtained a judgment on one of said notes against Lindsay, on which said execution was issued, and sold said judgment and the other note to the defendant in this case, "about three weeks ago." Lindsay was examined as a witness for the plaintiff in rebuttal, and testified as to the terms of his purchase from Moragne, and the subsequent facts relied on as showing payment of the purchase-money. His testimony is quoted at length in the opinion of the court, and it is unnecessary to repeat it. The court gave the general charge in favor of the plaintiff, to which the defendant excepted, and which is now assigned as error.

DENSON & TANNER, for appellant, cited 6 Amer. & E. Encyc. of Law, 867; *Prutsman v. Baker*, 11 Amer. Rep. 592; *Shirley v. Ayres*, 14 Ohio, 308; *Connor v. Hundley*, 13 Pac. Rep. 315; *Jones v. Pullen*, 66 Ala. 306; *Wright v. Lang*, 66 Ala. 389; *Hathaway v. Payne*, 34 N. Y. 112.

DORTCH & MARTIN, contra, cited Washb. Real Property, 302, § 44; 31 Amer. Rep. 369; *McWilliams v. Phillips*, 71 Ala. 80; 65 Barb. 58; 121 Mass. 424.

McCLELLAN, J.—The defense relied upon by the defendant, the White Star Line Steamboat Co., confessedly depended upon the delivery of the quit-claim deed of plaintiff's intestate to one Lindsay, under whom defendant claimed. This deed was signed by Isaac Moragne, the intestate, on February 12, 1884, and purports to convey the land in controversy to said Lindsay; but the purchase-money was not presently to be paid, and the deed was delivered in escrow to J. L. Cunningham, to be held by him until the purchase-money was paid in full, and upon the happening of that event was to be delivered to the grantee. It is not claimed that there has ever been an actual delivery of this deed out of escrow. But the better view is, that upon the happening of the condition upon which manual delivery should be made, a deed theretofore in escrow becomes, *ipso facto*, the deed of the grantee, and that thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee.—6 Amer. & Eng. Encyc. of Law, 867; Laws of Escrow, 15 Cent. L. J. 162;

3 Washburn's Real Prop., 323; *Prutsman v. Baker*, 30 Wis-644; s. c., 11 Amer. Rep. 592; *Shirley v. Ayres*, 14 Ohio, 308; *Simpson v. McGlathery*, 52 Miss. 723; *Campbell v. Larmore,* 84 Ala. 499. The real question in the case, therefore, was,. whether the condition upon which delivery was to be made had transpired; or, in other words, whether the purchase-money had been paid in full. Proof of this fact being essential to the defense relied on, and the negation of it not being a part of the *prima facie* case made by the plaintiff, the burden of establishing it was upon the defendant.

The general affirmative charge was given for the plaintiff, and in passing upon the exception reserved thereto, the sole inquiry is, whether there was any evidence tending to show full payment of the purchase-money; since, if. any, however weak and inconclusive, its sufficiency should have been submitted to the jury, and the giving of the general charge would be erroneous.

The consideration for the deed from the plaintiff's intestate to Lindsay was $550. There is evidence tending to show that $170 of this sum was presently paid in cash, and that two notes executed by Lindsay to Moragne, amounting to $112.50, for other part of the purchase price, were paid by or for the grantee, a short time before the trial. This left a balance of $266.50, exclusive of interest. The evidence relied on as having a tendency to show that this balance has been paid, consisted solely of the testimony of Lindsay, to the effect that in 1884, soon after the execution and delivery in escrow of the deed, "under an agreement and arrangement between him and Moragne, he had transferred to said Moragne, in part payment for said land, a note for four hundred and sixteen dollars, executed by one Farrar and James Cunningham, and payable to witness, and that said note was a solvent note; there was a credit of one hundred dollars paid on said note before he let Moragne have it. Under the agreement between him and Moragne, if there was collected on this note an amount over and above the amount of the purchase-money due on said land, then said Moragne was to pay the same to witness. It was also agreed between witness and Moragne, that if any money was collected on the Farrar note, the same was to be credited on the purchase-money for the land. Witness did not know whether Moragne had collected anything on said note, or not. The note had never been returned to him, and he does not know where it is. Witness had never paid the two notes aggregating $112.50 before mentioned, and besides said two notes, he did not know whether he owed anything on said land or not."

This evidence, taken, as it must be, all together, can mean or tend to show nothing more than that Moragne had the Farrar note for collection on Lindsay's account; that the money collected on it, to the extent of the land balance, should, when collected, be applied as a payment of that balance; and that the witness did not know whether there had been any collection on that note, and of consequence did not know whether or not the balance of the purchase price of the land had been paid. Very clearly, the transfer of the note under the agreement detailed by the witness was not a payment.—*Mc Williams v. Phillips*, 71 Ala. 80. Very clearly, also, the only payment possible, as arising out of the transaction, was the payment by Farrar and Cunningham to Moragne; and this evidence neither shows or tends to show that they have ever made any payment whatever. There was, therefore, no evidence in the case tending to show the transpiring of the condition upon which the only defense relied on by the defendant absolutely depended, and, the plaintiff having made out a *prima facie* right to recover, the general charge was properly given in his favor.

This being the only point reserved for our consideration, the judgment of the Circuit Court is affirmed.