JOHN BAKER, *revived in the name of Mary A. Baker*, *E. F. Baker, and the unknown heirs of John Baker, deceased,* v. MARY H. SNAVELY *et al.* (WILLIAM WEISIGER *et ux., Appellees;* S. C. THOMPSON, *Appellant*).

No. 16,688.

SYLLABUS BY THE COURT.

1. DEEDS—*Time of Taking Effect—Delivery in Escrow or Second Delivery.* Under the circumstances of this case, the question whether a deed should take effect from the time it is placed in escrow or from its actual delivery to the grantee depends upon which view will best promote the ends of justice.

2. —————— *Burden of Proof—Intervening Rights.* A purchaser contending that a deed should relate back to the time it was placed in escrow has the burden of proving, as against intervening rights, that he is otherwise unable to protect himself from loss.

Appeal from Finney district court. Opinion filed March 11, 1911. Affirmed.

*O. H. Foster, Edgar Foster,* and *H. O. Trinkle,* for the appellant.

*A. M. Harvey, Albert Hoskinson,* and *Ralph W. Hoskinson,* for the appellees.

The opinion of the court was delivered by

SMITH, J.: William Weisiger was the record owner of the lots in question. On the 6th day of November, 1901, one Clarence Ford obtained a tax deed to the lots, and his right thereto was conveyed to John Baker, who, subsequently, and on the 5th day of October, 1905, brought this action in the district court of Finney county to quiet his title to the lots against Weisiger and wife and others. Service was made by publication. On the 21st day of November, 1905, judgment was rendered in favor of the plaintiff quieting his title.

On March 3, 1906, Weisiger and wife filed their mo-

tion and affidavit to open the judgment, and also filed an answer to the petition of Baker, in which they made a general denial of the allegations of the petition, and, for a second defense, alleged that the tax deed upon which the plaintiff based his title was null and void. On April 21, 1906, the motion to open the judgment was allowed.

September 22, 1906, the Weisigers filed a motion to make S. C. Thompson a party defendant, which motion was sustained November 30, 1906, and summons served on Thompson on December 2, 1906. Permission was also given the Weisigers, on November 30, 1906, to file an amended answer and cross-petition, in which, in addition to the allegations of the former answer, they alleged that defendant Thompson purchased the property in controversy on or about the 31st day of March, 1906, from Noah B. Matkins, to whom the plaintiff, John Baker, on the same day had conveyed the property; that both transfers were made with the full knowledge of the interest of the Weisigers in the property, and were made for the purpose of defrauding them out of their interest therein, and that such transfers were null and void as against them.

On August 23, 1907, by leave of court and with the consent of the Weisigers, Thompson filed an answer in which he admitted that he claimed an interest in the property, and made a general denial to the allegations of the cross-petition, alleging, in substance, that he purchased the premises from Noah B. Matkins on the 10th of January, 1906; that Matkins executed a warranty deed conveying the premises to him; that at that time he was actually occupying the premises, and has ever since continued in the possession thereof; that he purchased the property in good faith, after taking legal advice that the title to the premises was in Noah B. Matkins, and after being advised by counsel that the title to the property had been quieted in the action of John Baker against Mary H. Snavely *et al.;*

that he made a payment on the property, and took it subject to a mortgage for $1650, which he had since paid off and discharged; that at the time of the purchase he had no notice of any claims by defendant William Weisiger, and bought the property in good faith; that the tax deed in question was recorded in the office of the register of deeds of Finney county on the 7th of November, 1901, that five years had expired after the recording of the deed prior to any pleading filed by defendant Weisiger against this defendant; and that the action, as to him, was barred by the five-year statute of limitation.

Trial was had before Charles E. Lobdell, judge *pro tem.*, and the following findings of fact and conclusions of law were made:

### "FINDINGS OF FACT.

"(1) That the defendant, Weisiger, is the owner of the fee or patent title to the property in controversy, unless such title is extinguished by the tax deed to Baker or by the judgment heretofore rendered in this case and subsequent conveyances which are claimed to have been accepted in good faith and in faith of such judgment.

"(2) That on November 21, 1905, the plaintiff, John Baker, obtained judgment in this court and in this cause quieting title in him to the land in controversy against the defendants, Weisigers.

"(3) That on November 28, 1905, John Baker executed a sufficient deed of general warranty to the property in controversy to Noah B. Matkins and placed the same in escrow for future delivery with G. L. Miller.

"(4) That on March 3, 1906, the defendants, William Weisiger and wife, filed in this court their motion, in proper form, to open up the judgment thereinbefore rendered in favor of Baker as recited in finding No. 2.

"(5) That thereafter, and on April 21, 1906, by the consideration of this court such decree and judgment was fully set aside and opened up.

"(6) That on March 31, 1906, the deed from Baker to Matkins was, by Miller, delivered to Matkins.

"(7) That on February 19, 1906, Noah B. Matkins, a single man, executed a sufficient warranty deed to the property in controversy to the defendant S. C. Thompson, which deed was placed in escrow with G. L. Miller, as was the deed from Baker to Matkins.

"(8) That on the same date that the deed from Baker to Matkins was delivered by Miller the deed from Matkins to Thompson was by Miller delivered to Thompson.

"(9) That Thompson took possession of the property in controversy on January 6, 1906, and has been continuously in possession since that time.

"(10) That the title of Baker at the time of his judgment rested upon the tax deed introduced in evidence.

"(11) That a part of the consideration for the tax deed on which Baker's title rested was what was known as 'current university tax,' levied for the year 1896.

"(12) That the so-called redemption notice for the lots in controversy, published by the county treasurer of Finney county, contained in the amount stated as necessary to the redemption of said lots the sum of thirty-five cents as costs for advertising, and included it for each of the three years embraced in the notice necessary to redeem, and that the treasurer's fee of twenty-five cents was also included in the notice for each year."

"CONCLUSIONS OF LAW.

"(1) That the tax deed to Baker is voidable and should be set aside because of the facts stated in findings 11 and 12.

"(2) That the creation of the escrow with reference to the deeds from Baker to Matkins and Matkins to Thompson was not in law delivery of the deeds.

"(3) That the delivery of such deeds, which actually took place on March 31, 1906, can not be made to relate back so as to relieve Thompson and Matkins of the effect of the notice to open up judgment, which motion was filed before the escrow was terminated.

"(4) That at the time of the delivery of their deeds to them Matkins and Thompson had constructive notice, which was binding upon them, of the motion then filed and pending in this cause to open up and vacate the judgment, and that neither of them was a purchaser in good faith and in faith of such judgment."

Baker v. Snavely.

The contention of the appellees is that the deed from Baker and wife to Matkins did not become a conveyance of the property until the actual delivery thereof on the 31st of March, 1906, that the deed from Matkins to Thompson did not become an actual conveyance until the same date, and that Thompson had constructive notice of the pendency of the action before the deed was delivered to him.

Upon the other hand, the appellant contends that both the deed from Baker to Matkins and the deed from Matkins to him were executed long before the motion to reopen the judgment was filed, on March 3, 1906; that the considerations therefor were paid in part at the time of the execution of the contracts, and the remainder in full when the deeds were delivered, on March 31, 1906; that they were in escrow with Miller from the time of their execution until their actual delivery, and that when the actual delivery was made, on March 31, 1906, the delivery dated back to the time of the original contracts and partial payments. These adverse contentions constitute the only substantial question in the case.

Whether a deed executed and placed in escrow relates back to the time of the contract and execution thereof, so as to vest the grantee with the full title from that time, or whether it becomes such conveyance only upon the full performance of the conditions, seems to depend upon which of the two theories will promote justice under all the circumstances of the individual case.

"This doctrine of relation (from the time of the second delivery to the time of the delivery in escrow) is of ancient origin, and has always been applied, both at law and in equity, to meet the requirements of justice, to protect purchasers, and to effectuate the intent of the parties to contracts." (*Scott v. Stone,* 72 Kan. 545, 548, citing numerous cases.)

The syllabus in that case states the rule strongly, without exception, and holds that, under the circum-

stances of that case, the delivery dated back to the time of making the contract. The same doctrine was upheld in *Davis v. Clark,* 58 Kan. 100. In each of those cases justice clearly required that the conveyance be held as of the date of the delivery in escrow and not as of the date of the second delivery.

In a case similar to this, *Hill v. Miller,* post, 196, as between the rights of a purchaser from a tax-deed holder and the holder of the patent title, who had brought an action to set aside a decree quieting the title, it was said:

"At all events he [the purchaser] was not protected by the statute unless he bought and paid for the land prior to January 18, 1908, the date when the proceeding was begun to set aside the decree quieting title." (p. 198.)

No finding is made by the court in this case in regard to any payment made by the appellant prior to the delivery of the deed from the party holding it in escrow, which was twenty-eight days after the filing of the motion to set aside the judgment. Nor does the appellant disclose in his evidence how much he paid toward the purchase price, at or prior to the time of the execution of the deed. The evidence is that he made a payment. According to the evidence, he purchased seventeen lots for $3500, nearly $206 per lot, and assumed the payment of a mortgage for $1650, which he afterward paid, leaving $1850, upon which "a payment" was made at the time of purchase, and the remainder March 31, 1906. The three lots involved in this action would, at the price, amount to about $618, leaving over $1200, less such payment as he may have made, and the amount of which he does not disclose, to protect himself against any failure of title. He was bound to take notice, at the time he actually received his deed and made final payment, of the proceeding to vacate the judgment quieting the title, and, as he has failed to show that he was unable to protect himself

from any loss, if the title to the lots should eventually be shown to be in the appellees, there is no reason for holding that the second delivery of the deed related back to the time it was delivered in escrow. .

On the other hand, the invalidity of the tax deed is not contested, and the appellees' equities in the case are very strong. We think the court correctly decided the case. We have not considered various other assignments of error, as it seems to be conceded that the case. must turn upon this one question.

The judgment is affirmed. .