No. 22,045.

O. Q. ELLIS, *Appellee*, v. HOME INSURANCE COMPANY OF NEW YORK, *Appellant*, et al.

### SYLLABUS BY THE COURT.

1. INSURANCE—*Loss While Deed is in Escrow—Vendor May Recover Loss.* Before the loss occurred, the owner of the property insured made an oral agreement for its sale and placed in escrow the policy assigned and a deed to be delivered on payment of the balance of the purchase price. The papers so deposited were not delivered until several weeks after the loss occurred. *Held,* that the owner had not transferred his title to or his interest in the property or the policy.

2. SAME—*Mortgage on Property Partly Paid—Judgment for Plaintiff for Entire Loss—Demurrer to Supplemental Reply.* In an action on the policy a mortgagee was made a party defendant but made default. Judgment was entered for the plaintiff for the conceded amount of the loss. The plaintiff, having shown that the party who had bargained for the land had paid two-thirds of the mortgage and was able, ready and willing to pay the remainder at any time, filed a supplemental reply averring that since filing his last pleading this same person had paid the mortgage in full and it had been released. A demurrer to this supplemental reply was sustained. *Held,* that while

no sufficient reason for this ruling appears, no substantial injury was caused thereby, and hence no material error was committed.

Appeal from Kiowa district court; LITTLETON M. DAY, judge. Opinion filed March 12, 1921. Affirmed.

*John D. Beck,* of Greensburg, *M. A. Fyke,* and *E. L. Snider,* both of Kansas City, Mo., for the appellant.

*John W. Davis,* of Greensburg, for the appellee.

The opinion of the court was delivered by

WEST, J.: This action was on a tornado policy to O. Q. Ellis, loss payable to the Union Central Life Insurance Company, as its interest might appear. When the loss occurred there was an indebtedness due that company greater than the amount of the insurance, secured by a mortgage on the property insured. The mortgagee was made defendant. Before the loss the plaintiff assigned the policy to Bennie W. McFadden, and made an oral agreement that a deed for the land and the policy assigned should be held by the Farmers National Bank, to be delivered upon payment of a certain amount of money.

The answer alleged that the plaintiff contracted to sell and did sell and convey the property, whereupon his interest, title and possession were transferred, and he was not the owner or in possession at the time of the loss, and that before the loss he had assigned and transferred all his rights in the policy to Bennie W. McFadden.

The policy contained the provision that if any change other than by the death of the owner should take place in the title or interest or possession of the property, the entire policy should be void.

By what seems to have been an affidavit attached to the reply it was alleged that the plaintiff did not sell and convey the property, and that the title and possession were not changed, and that the plaintiff did not assign and transfer his interest in the policy to Bennie W. McFadden.

J. W. McFadden testified, among other things, that Bennie W. McFadden was his son; that he, the witness, had a contract for this land when the buildings were destroyed and had put up $2,500 in the bank as part of the purchase money; that the contract was made in January, 1915, and that Bennie signed some sort of a paper for the adjuster.

Ellis v. Insurance Co.

"We purposed to own the land if we made the payments and the deal went through; we did not claim that we absolutely owned the land; we told the man exactly how the deal stood; that we had contracted for the land and the deed was in escrow."

He testified on cross-examination that he had nothing to do personally with the escrow agreement; that the papers were in escrow until August 12, one of them being a deed from the plaintiff for the land; and further, that he had paid a part of the mortgage indebtedness to the Union Central Life Insurance Company, and was ready, able and willing at any time to discharge the remainder.

Bennie W. McFadden testified, among other things, that the tenant ceased to live on the land on the 11th of June, and gave up possession about the 5th of August. The cashier of the bank testified that the escrow papers were delivered about the 12th of August. J. W. McFadden further swore that he met the adjuster who asked him a number of questions, and afterwards telephoned that he would adjust the loss. He wrote up the papers and stated that the draft would come payable to O. Q. Ellis, J. W. McFadden and Union Central Life Insurance Company. Bennie did not claim he personally owned the land:

"No, we told the man how the deal stood, we had contracted for the land and the deed was in escrow."

The court overruled a demurrer to the plaintiff's testimony and entered judgment for the plaintiff.

The plaintiff filed a cross appeal from the action of the court in sustaining a demurrer to his supplemental reply. He contends that while the action was pending the plaintiff paid to the Union Central Life Insurance Company $1,500, the amount claimed to be due under this mortgage, and secured from it a release which he sought to set up by the supplemental reply, to which a demurrer was sustained.

Some point is sought to be made that the plaintiff had ceased to have any interest in the policy at the time of the trial, but the answer sets up only the defense that he had parted with his interest by the papers which appear to have been placed in escrow with the bank. All the testimony tends to show that this escrow agreement was not carried out until long after the loss, and hence the assignment of the policy, although made before, could not and did not take effect until its delivery, which was

after the loss. (*Baker v. Snavely,* 84 Kan. 179, 114 Pac. 370; *Pomeroy v. Insurance Co.,* 86 Kan. 214, 120 Pac. 344; *Business Blocks Co. v. Gregory,* 102 Kan. 33, 169 Pac. 191; 16 Cyc. 588.) The defendant's claim of noninterest on the part of the plaintiff, being based on the papers placed in escrow, is therefore without merit.

It is argued that the mortgagee is entitled to the proceeds of the policy and hence it was error to adjudge them to the plaintiff. Two answers may be made to this. Mr. McFadden had already paid two-thirds of the sum to the mortgagee and it appeared that he was ready, able and willing to pay the remainder at any time. The mortgagee, made a party, does not complain, indeed made default, and the insurer has no just grounds to impeach the judgment which was well supported by the evidence. (*Cromwell v. County of Sac,* 94 U. S. 351.)

It is also suggested that Mr. McFadden and not Mr. Ellis should have been the plaintiff. Two answers may also be made to this. The adjuster made the draft payable to Ellis, McFadden and the Union Central Life Insurance Company, and none of the payees need suffer loss. Again, it was testified without dispute that Mr. McFadden, who had bargained for the land before the tornado, had an agreement with Mr. Ellis that as a sort of replacement of the buildings the latter should, on payment of the balance due on the purchase price, account to him for the proceeds of the policy, but this did not divest the plaintiff of his title to the policy or of his right to maintain the action. (*Pomeroy v. Insurance Co.,* 86 Kan. 214, 120 Pac. 344.)

It appeared by the supplemental reply that Mr. McFadden, since the filing of the second amended petition, had paid the mortgage in full and it had been released. We neither see why the demurrer to this pleading was sustained, nor how the plaintiff is materially injured by the ruling, in view of the default of the mortgagee and the terms of the judgment rendered.

Finding no substantial error, the judgment is affirmed.